UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.                                                        Case No. 2:25-CR-0066-GSL-AZ

TAMIYR MCKNIGHT

## OPINION AND ORDER

This matter is before the Court on the Request to Revoke or Modify Detention Order [DE 130] filed by Defendant, Tamiyr McKnight, on April 1, 2026. The Government responded [DE 132] on April 8, 2026. A hearing was held on this Motion on June 23, 2026. [DE 165]. For the reasons set forth below, the Court **GRANTS** the Motion.

## BACKGROUND

On November 21, 2025, a federal grand jury returned a seven count Indictment against McKnight and seven other individuals related to an alleged scheme to fraudulently cash stolen U.S. Treasury Checks. [DE 29]. The Indictment charges McKnight with Conspiracy to Traffic Stolen U.S. Treasury Checks, 18 U.S.C. § 510(b) (Count 1) as well as Wire Fraud (Counts 2-6) and Aggravated Identify Theft (Count 7). [*Id*.].

McKnight was arrested, in relation to the above-described charges, on December 3, 2025. [DE 55]. His initial appearance was held before Magistrate Judge Abizer Zanzi (hereinafter referred to as "Judge Zanzi") on the same date. [DE 61]. The Government moved to detain McKnight pending trial. [DE 62]. A hearing on the issue of detention was held on December 8, 2025, before Judge Zanzi. [DE 80]. Judge Zanzi found that detention was warranted pursuant to

18 U.S.C. § 3142(f)(2) because the Government met its burden in proving, by a preponderance of the evidence, that McKnight is a serious flight risk. [DE 81].

On April 1, 2026, McKnight filed the instant motion requesting that this Court revoke or modify the December 8, 2025 Detention Order pursuant to 18 U.S.C. § 1345(b), and in doing so, requests that the Court conduct an independent review. [DE 130]. The Court held a hearing on this motion on June 26, 2026, where it indicated that it would be conducting a *de novo* review of the issue of detention in this case. [DE 165]; [DE 172 at 3].

## LEGAL STANDARD

When a defendant is charged with a criminal offense, they may be released on personal recognizance, temporarily detained, or detained. 18 U.S.C. § 3142(a). Detention is appropriate where there is no condition or combination of conditions that will reasonably assure the defendant's appearance in court and the safety of the community. *Id.* § (e)(1). In making a detention determination, the Court looks at the following:

(1) the nature and circumstances of the offense charged, including whether the offense involved a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the defendant;
(3) the history and characteristics of the defendant, including
   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
   (B) whether, at the time of current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and
(4) and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

*Id.* § 3142(g).

2

The Bail Reform Act creates several evidentiary presumptions to be employed in certain cases, when determining what (if any) release conditions are appropriate. *United States v. Dominguez*, 783 F.2d 702, 706 (7th Cir. 1986). The Act lists specific offenses that, if certain circumstances are present, carry a presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. *Id.* at § (e)(2)-(3). The presumption shifts the burden of production to the defendant to come forward with some evidence that, if released, he would not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). The burden is not heavy, as any evidence favorable to a defendant that comes within a category listed under § 3142(g) will suffice. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Even if rebutted though, the presumption remains in the case as an evidentiary finding militating against release. *Id.* The government bears the ultimate burden of persuasion, *United States v. Wilks*, 15 F.4th 842, 846-47 (7th Cir. 2021); *Dominguez*, 783 F.2d at 706–07, and must prove danger by clear and convincing evidence and flight of risk by a preponderance of the evidence. *Portes,* 786 F.2d at 764–65.

## DISCUSSION

### A. Standard of Review

The Seventh Circuit explains that, under 18 U.S.C. § 3145(b), district courts have the option to either hold a new hearing on the issue of detention or review the record of the proceedings before the magistrate judge. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991); *United States v. Bruma*, 2025 WL 1036543, at *1 (N.D. Ind. Apr. 8, 2025). If the district court decides to hold a new hearing, its review is considered "*de novo* since it must make an independent determination of the proper pretrial detention or conditions for release." *Bruma*, 2025 WL 1036543, at *1. As explained above, the Court is considering the issue of detention *de novo*,

3

meaning it will determine whether pretrial release is warranted based on the evidence and argument presently before it.

### B.  § 3142(g) Factors

As an initial matter, the Government is not moving under the presumption. Therefore, the burden is on the Government to show either, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure McKnight's appearance in this Court or by clear and convincing evidence that no condition or combination of conditions reasonably assures the safety of the community.  18 U.S.C. § 3142(f)(2)(A)-(B).

The Government has indicated that it is *not* moving for detention on the basis that McKnight is a danger to the community, rather only that he is a flight risk. [DE 174 at 27]. Therefore, if the Government fails to show, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure McKnight's appearance in this Court, then he is entitled to pretrial release. § 3142(f)(2)(B); *Portes,* 786 F.2d at 764–65.

*Nature and Circumstances of the Offense*

The first factor a court must consider is the nature of the offense that a defendant is charged with committing, including whether it is a crime of violence.  *See* 18 U.S.C. § 3142(g)(1). McKnight's charges for trafficking stolen treasury checks, wire fraud, and aggravated identity theft stem from an alleged scheme involving eight individuals who conspired with one another to obtain stolen U.S. Treasury Checks from the mail, then generate fraudulent personal identification information for the individuals who were the intended recipients of the checks in order to cash the checks at currency exchanges in the greater Chicago area, including Northwest Indiana. [DE 1]. The Government has further alleged McKnight to be one of the leader/organizers of this alleged scheme. [DE 174 at 7-8].

The charges described above are not considered crimes of violence. 18 U.S.C. § 3142(g)(1). Therefore, to the extent that this factor is germane to this case, it militates against detention.

*Weight of the Evidence*

The Government has offered substantial evidence and argument to support several of the charges contained in the Indictment. That evidence consists of an extraction of McKnight's phone which revealed text messages that the Government argues are discussions related to creating fraudulent documents containing personal identification information, photocopies of treasury checks and corresponding personal identification documents not belonging to McKnight but allegedly testing positive for his finger prints, and surveillance video of defendants arriving at a currency exchange. *See generally* [DE 166]; [DE 174 at 7-10]. While understanding that a "pretrial detention decision may incorporate some consideration of the accused's guilt, a pretrial detention decision should not effectively prejudge the merits." *United States v. Lewis*, 2023 WL 4351244, at *1 (7th Cir. 2023). Here, the weight of the evidence is strong and this factor tips in favor of detention.

*History and Characteristics*

This factor requires the Court to assess a defendant's character, physical and mental condition, family ties, employment, financial resources, criminal history, community ties, and more. It also instructs the Court to consider whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial. 18 U.S.C. § 3142(g)(3).

McKnight is a 27-year-old male, who has resided in the Chicagoland area for most of his life. [DE 74 at 1]. He is single with no children. [*Id*. at 2]. McKnight attended college but did not

obtain a degree. [*Id.*]. His employment status and history is unknown. [*Id.*]. Finally, McKnight has no criminal history. [*Id.*].

The Government argues that McKnight's history and characteristics support the notion that he is a flight risk and therefore should be detained. They rely exclusively on 1) McKnight's alleged conduct on the date of his arrest, and 2) their position that he was living in an apartment rented under the name of "David Williams". Looking first at the day of his arrest, the Government provided dash cam footage of law enforcement pulling over a white Chrysler sedan on December 3, 2025. [DE 166]. The footage shows the vehicle initially stopping, but then shortly after, speeding off in what appears to be an attempt to evade law enforcement. [*Id.*]. The Government contends that McKnight was operating the vehicle at that time because the vehicle was last registered to McKnight three years prior in 2022. [DE 174 at 18-19]. They also argue that during the course of the investigation in this case, law enforcement had observed the same vehicle at an apartment complex McKnight frequented. [*Id.* at 17].

While a vehicle speeding away from a traffic stop is certainly evidence of fleeing law enforcement, the Government conceded at the hearing that "[t]he windows were heavily tinted and [] the agents could not see into the car … [to] positively identify who was driving the car at the time." [*Id.* at 17]. The Government also provided surveillance images of a female, also a named defendant in this case, exiting the driver's side of the same white sedan on a separate occasion, leading the Court to infer that other people besides McKnight use the vehicle that sped away from law enforcement on December 3, 2025. [DE 166]. Finally, McKnight's mother reported to Probation that the vehicle had been stolen one week prior to McKnight's arrest, the same day the vehicle fled the traffic stop. [DE 74]. The Court finds the Government's evidence far too

6

speculative to attribute this conduct to McKnight, and to the risk of his failure to appear in this Court.

The Government also argues that McKnight's alleged sophisticated ability to create fraudulent means of identification could allow him "to go into hiding with a different identity… mak[ing] it very [] difficult for the court or government to actually ensure his appearance." [DE 174 at 25]. The Government supports this argument with their contention that at the time of his arrest, McKnight had been living in an apartment unit rented out to an individual named "David Williams." The Government provided a copy of "David Williams" driver's license, which the apartment management had on file. The photo on the license is not McKnight. The Government contends that, through facial recognition, they were able to confirm that the photo on the driver's license was not actually "David Williams" either, so presumedly whoever rented the unit did so using fraudulent means of identification. [DE 174 at 16]. The Government infers that McKnight residing at this unit, under a false identity, is corroborated by building staff knowing McKnight as "David Williams" as well as a surveillance video of McKnight in a common hallway at the complex and that he was there, with another person, at the time he was arrested on December 3, 2025. [*Id*. at 14-15]. The Court acknowledges that these circumstances, taken together, may support the government's inference. However, no search was conducted at the unit after McKnight's arrest and therefore, no evidence was obtained from that unit by law enforcement to substantiate who was living in that unit. [DE 174 at 37-38]. Further, the Bond Report indicates that McKnight resides at an address different from the apartment complex. [DE 74].

Notwithstanding, the relevant inquiry is whether there are any conditions that could reasonably assure McKnight's appearance in Court. Notably, there is nothing before the Court, as far as McKnight's history and characteristics to indicate that he has ever failed to appear in court,

and the Government's allegation that McKnight fled law enforcement on the date of his arrest is unsupported and inconsistent with the evidence.  In fact, the video footage of McKnight's arrest shows he was compliant with law enforcement and went into custody without issue.  Based on this, the Court finds that the Government has not met its burden in proving by a preponderance of the evidence that no condition or combination of conditions will ensure McKnight's appearance in this Court.[1]

<strong><u>CONCLUSION</u></strong>

The Court hereby **GRANTS** McKnight's Request to Revoke or Modify Detention Order [DE 130]. The Court **REFERS** this matter to Judge Zanzi for a hearing on the imposition of conditions for supervised release as soon as practically possible.

SO ORDERED.

ENTERED: July 27, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court

---

[1] Ordinarily, the court will consider the nature and seriousness of the danger to any person or the community posed by a defendant's release. 18 U.S.C. § 3142(g)(4).  However, the Government has represented that while McKnight has caused a lot of "financially [] dangerous conduct," him posing a danger to the community is not a basis for detention and therefore provided no evidence or argument in support thereof.  [DE 174 at 26-27].